Good morning, Your Honors. May it please the Court, my name is Paul Alvarez and I represent the Securities and Exchange Commission, and with the Court's permission, I would like to reserve three minutes for rebuttal. Your Honors, this is an appeal of a civil enforcement action in which the Commission alleged in the evidence at trial overwhelmingly showed that the defendants, Peter Jensen and Thomas DeColvay, the CEO and CFO respectively of Basin Water, violated the federal securities laws by causing Basin Water to be sued. It didn't overwhelmingly show the evidence because it didn't convince the judge. Well, it didn't convince the judge, but that doesn't mean the evidence didn't overwhelmingly show it. Indeed, I think when we see what the District Court actually found, there was a number of things that the District Court either didn't meaningfully consider or didn't consider at all. And the evidence the Commission submits does overwhelmingly show that there were violations in this case. Would you want us a chance to show overwhelmingly but to a jury? Well, I think there's two things, actually. We would like to, we think at a minimum, the Commission is entitled to a jury trial because the Commission was entitled to a jury trial under, there's no dispute as to whether it was entitled to a jury trial and the Commission did not waive its objection to the District Court's erroneous order setting a bench trial. But independently, at the erroneous bench trial, the District Court made a number of incorrect legal conclusions that no federal securities law violations occurred in this case and that those conclusions were predicated upon clearly erroneous findings of fact. But if we reverse and remand for a jury trial, does it make any difference to discuss what the errors were by Judge Rayl? Well, first, it does establish that the error was not harmless. But if you are assuming that you're going to reverse and remand for a new trial, that doesn't necessarily get to that issue. But independently, Your Honors, the error, if there is an error in not granting a jury trial, is subject to harmless error review. That is correct. Okay. That is correct, Your Honor. Yes. And if I may turn to that first issue about the jury trial, I think it's important to provide a bit of context here. First, it is undisputed that when the defendants, after the defendants requested a jury trial in their answers, the parties then proceeded for the next 18 months as if there was going to be a jury trial, and that included conducting all discovery as well as substantive motions practice and motions in limine. And indeed, it wasn't until after the defendants received a number of favorable rulings on those motions that they made the strategic decision to switch tacks and request a bench trial. But the commission, the very same day the defendants requested a bench trial, filed a notice with the court indicating and reminding the court and the defendants that Federal Rules of Civil Procedure 38 and 39 require consent, and stating in no uncertain terms that the commission did not consent to a bench trial. Furthermore, after the district court issued its erroneous bench trial order, the commission in the period between that order and the bench trial objected to that on a number of occasions. Accordingly, under the clear and binding precedent in this circuit, the commission not only was entitled to a jury trial, but it did not waive its objection to the district court's erroneous bench trial order. Moreover, the error in setting the bench trial was not harmless. In order for the district court's order to stand here, this court would have to conclude that no reasonable jury could have found for the commission. But in light of the fact that the standard of proof is a preponderance of the evidence standard, and indeed in light of the strength of the evidence, and as I mentioned previously, some of which the district court didn't even appear to consider, not only could a reasonable jury find for the commission, but the commission submits that a reasonable jury could only have found for the commission on the basis of the totality of the record evidence. And if I may turn to those yes, Your Honor. Roberts. Kennedy. Assume for the moment that you prevail on whether you were entitled to a jury trial. What happens to the pieces that would properly have been before the judge anyway? What pieces are you referring to? Well, that's part of the question, because you're seeking not only the civil penalties that's the key to your access to a jury. You're also seeking equitable remedies that customarily would be in the province of the judge. What happens? Well, the lawyer gets thrown out or is there anything left over? No. I think it all gets brought back. If this Court were to remand for a jury trial, the same claims would be before the judge and the jury, because as the Supreme Court has said in Tull and the Ninth Circuit has recognized in Nordbrok, where a cause of action exists for civil penalties, even if there are additional equitable remedies that are being sought, all of those can be placed before a jury. And so we would submit that all of the claims, both for legal and equitable relief, would be at least tried for the jury as a trier of fact. The judge could assess the equitable remedies, but in terms of assessing what facts actually occurred, the jury would be the fact finder in the new trial. So part of my question, which I didn't make clear, is that the district court had granted summary judgment on certain issues. And I take it you are seeking to revive those and you've challenged the summary judgment. So the issues that are left here beyond the jury trial issue would include addressing those. Well, that's correct. If this court, we believe that those, as we stated in our briefs, the issues regarding the 13A14 claim, the exclusion of the Hansen evidence, and other things that were addressed at the summary judgment and motion and limine stage, we believe that those issues should be addressed by this court. But if this court were not so inclined to reach those issues, we would ask that this court specifically indicate that it is not reaching those issues and permit the court to have those rulings reconsidered before the new trial takes place. So unless the court has any further questions on the jury trial issue, if I may move to the clearly erroneous factual findings. As I mentioned earlier, although the commission is at a minimum entitled to a jury trial on all claims, independently the commission is entitled to a judgment in its favor on all claims because at the ensuing erroneous bench trial, the district court made a number of incorrect legal conclusions that no securities law violations occurred, and those legal conclusions were predicated upon clearly erroneous factual findings that revenue recognition was proper for the six transactions at issue. And I think, again, it's important to provide a bit of context here. There are certain things that are not at issue. First, it is not in dispute that the statements made regarding the revenue were made in connection with the offer or sale of a security. It is also not at issue that these statements regarding the revenue were material. Indeed, the revenue for five out of the six transactions amounted to over 40% of Basin's quarterly revenue for the quarters in which the revenue was recognized. And finally, it is not in dispute that the standards for revenue recognition set forth in SAB 104 govern these transactions, and the defendants themselves admitted at trial that they knew of these standards at the time that they were causing Basin to recognize the revenue. Accordingly, the only thing, the only two things that this court needs to answer, the only two questions this court needs to answer in order to find a judgment in favor of the commission are, one, was there a basis under the relevant accounting standards at the time the revenue was recognized for revenue recognition? And second, if there was not a basis, did the defendants know or must they have known that there wasn't? And we submit that the evidence overwhelmingly shows that there was no such basis under the relevant accounting standards, and that the defendants knew or must have known about it. The commission raised a number of challenges that the accounting was improper, but for ease of the court and to sort of avoid the tedium of accounting, I would like to focus on the most glaring errors, and that is with respect to the first four transactions regarding the element of persuasive evidence of an arrangement. The first four transactions being Opus Trust, Thermax, VLC1, and WSS1. SAB 104, Staff Accounting Bulletin 104 states that in order to have persuasive evidence of an arrangement, there must be a final understanding as to the terms and conditions of the transaction. If there is not a final understanding as to those terms and conditions, revenue cannot be recognized. This principle is espoused also in the Prevens v. Miller case in this circuit, which states that it is a violation of the gap to recognize revenue before the final terms of a contract are reached. And here, with respect to these first four transactions, there was no final understanding at the time the revenue was recognized as to the terms and conditions of these transactions. For example, in the Opus Trust case, the defendants testified below, and the district court found that in February of 2006, their auditors informed them that they could not recognize revenue for this transaction until they had identified the units, the water treatment units that were being sold. The defendants caused Basin to recognize revenue on March 30th of 2006. In order, therefore, for revenue to be properly recognized, there would have to have been an agreement as to the units and which units they were going to sell on or before March 30th, 2006. But I'd like to invite the court to look at Excerpts of Record 483. That is a June 16th, 2006 email from Mr. Ticolve to Mr. Jensen. And in that email, they are discussing which units they're going to sell to Opus Trust. It stands to reason, Your Honors, that if they're talking about which units they want to sell to Opus Trust in June, they could not have had an agreement as to the identity of those units three months earlier in March. Moreover, the defendants knew that they didn't have this agreement because they're talking about it in June. They also knew that they couldn't have done this because they testified that their auditors told them they couldn't until they had identified the units. Therefore, there was no basis for them to have recognized the revenue on March 30th, 2006. Turning to the Thermax transaction, again- Just to be mindful of your time, are you planning to speak to either the Exchange Rule 13A or the Hansen evidence issues? I can if this court would like to speak to it. It's not your fault, but avoiding tedium is kind of impossible from what you were talking about. Again, that's why I'm trying to make it simple for you. It's accounting, let's face it. All right. Right. And so, but I do have interest in those other issues at some point. So if, gauging what time you have left at some point, I would hope you would address those as well. Well, I'm happy to talk about those issues. I'm not trying to interrupt your sequence, but I don't know what your roadmap is, and it's supposed to be up to you. My roadmap was originally going to be, I was going to talk about the jury trial issue and the clearly erroneous findings of fact. But if this Court has any questions about 13A- Sure. Why does the, I mean, that seems repetitive. What the Commission's arguing for seems repetitive for what they have available to them elsewhere. Why do we need that rule to be interpreted in the way that you're advocating? Well, as the D.C. Circuit held in the Savoy Industries case, the, and as they held in the Savoy Industries case, the inherent in each of the reporting and certification requirements of the Exchange Act is the requirement that those certifications and reports be truthful and accurate. And the reason for this is very simple, because investors rely upon these statements and these certifications in assessing the state of a particular company. And I understand this Court- Yes. The substance, the truthfulness, the rule isn't written that way. Well, none of the rules are written that way, but the courts have recognized that in each of those rules there is this inherent truth and accuracy requirement. And again, the reason- Is there a scienter requirement there? No, there is not. There is not. But it's not strict liability either, Your Honor. So what is it? I mean, because when you say no, I start to say, okay, is this rule, although it's not necessarily apparent from the face of it, by reading in this truthfulness element, do you have strict liability here? How do you not? No, you don't. It's not a strict liability requirement. But here, where you have ample evidence of the defendant's scienter, I don't think that comes into play. And indeed- No, but I'm speaking now, I mean, the argument here is whether there is such a cause of action. Sure. And my sense coming in is that, look, there are lots of arrows that could be picked up by the commission. Why do we interpret this particular rule to provide still another arrow that seems aimed at the same – I mean, the concern you talk about is the reliance upon truthfulness. There are lots of things that the commission has that speak to truthfulness. Why this one? Well, I think if you interpret it any other way as to not require truthfulness for the certification, what you effectively have is a rule that has no purpose at all. You have a rule that allows certification- Well, it requires certification. So if you don't certify, you've got a violation. But it requires more than that, because if it only is requiring certification for certification's sake, then there's no reason to have the certification at all. The public can't rely upon whether or not those certifications are true or not. And they can't accurately assess- Are there other provisions the commission could utilize to go after an untruthful certification? There are. But the fact that there are doesn't mean that this rule doesn't also require truth. And indeed, in the Savoy Industries case, the D.C. Circuit had a case involving reporting requirements under the Exchange Act and also had claims under Section 10B and Section 17A of the Securities Act. So the D.C. Circuit there did not seem at all troubled by the fact that there were sort of multiple arrows in the quiver, to use Your Honor's analogy. I think all of these are aimed at ensuring that the public has an accurate understanding of what the company's state is. And to not include the inherent truth and accuracy requirement in these rules effectively denies the public the ability to assess whether or not there are gap violations or not. It really would give the defendants no incentive to be truthful in these certifications at all. And so the public would be denied the opportunity to know whether or not there are gap violations. And it would simply be certifications for certification's sake. And that's not what the commission is in the business of requiring, nor is the public. But you do grant that if the certification is made, you can pursue a false certification under other provisions of the SEC regulations. I do acknowledge that, yes. So if we had a playboy executive who didn't know anything about the financial condition of his company and he certified it, why wouldn't that be sufficient for 13A? I think it is. It is. That would be reckless if you don't know what's going on in your company. That would certainly be reckless to certify that there was compliance with gap if you didn't take the steps to know, if I'm understanding Your Honor's question. So a willfully ignorant executive certifying under 13A would be culpable? Yes. Yes. Unless the court has any other questions about this, I would also like to say that actually I see that I have three minutes left, so I'll save my time for rebuttal. Fair enough. Well, this is our day for multiple parties. Is there an understanding as to what's going to happen during the defendant's block of time? There is, Your Honor. I'm David Shepherd, and with my partner Bill Foreman, we represent Peter Jensen. Seth Aaronson at counsel table represents Tom Ticholby. If you could put the clock at 16 minutes, we're going to keep things fluid because if it appears that the argument will almost be coextensive and at the 16 minute mark, we'll whisper to see whether there's anything either on the panel's mind or on Mr. Ticholby's counsel's mind peculiar to Mr. Ticholby. Is that agreeable? We'll give it a try, understanding we don't have a long break at the 16 minute mark. I mean, time marches on. It'll be quick. So may it please the court. Borrowing from Judge Ferris' questions earlier, I want to provide at the outset a succinct set of reasons as to why the SEC, in fact, waived its right to jury trial and why the error, any error, was harmless. In terms of the jury trial waiver, the SEC learned on June 4 that there was, the matter was set for bench trial. The time to object was right then. Oh, and it already objected. Well, I, it depends on how you view an objection. It had pointed out it did not consent, but then Your Honor, as the jurisprudence guides us from other circuits and this circuit, that there was clearly a disconnect between what the SEC said on March 29 and what the district court's order that we all received on June 4 said. And the fact remains. And the fact remains that the district court's order was plainly wrong under the Federal Rules of Civil Procedure. It was error that the SEC waited three months to point out. Let's start with the first part. You dispute the proposition that the response, that the SEC's response filed the same day as defendants' withdrawal of their jury demand accurately stated what the Federal Rules of Civil Procedure 38 provides. It was a correct statement of the law. And the absence of their consent meant that the waiver of jury trial should have been ineffective. Correct. But the district court didn't see it that way. The district court issued an order wrongly on June 4. Three months later, when the SEC had 90-plus days to inform the district court and to inform the parties that saw the bench trial order and waited for an objection, it didn't do so. And neither to the district court, nor in 100 pages of briefing, 108 pages before this court, nor in its oral argument, has any explanation for the inaction been proffered. And, Your Honors, I submit the cases say there has to be vigilance in maintaining the right to jury trial. And they unquestionably did nothing, said nothing, viewed it as nobody's business what their intentions were, but their own. They did nothing. And there was reliance by the defense. There was reliance on it. And there was ample grounds to find waiver. The reliance was this. One, as we stated below, we prepared for a jury trial. You talk about the complications of accounting evidence. The reason for the waiver of jury trial was the judge's repeated statements. This is too complicated for a jury. We listened to him. We announced a withdrawal of our right to jury trial because there had been daubered hearings. If this case had gone to trial and we had had the summer, 90 days, to prepare the jury trial, it would have been entirely different, particularly with respect to making these difficult accounting points understandable to laypersons, borrowing exactly from what the district court judge said. So there was, as the Solis case warns, and as Judge Alarcon concurring in white against McGinnis, you look to the conduct of the party claiming to be aggrieved by the finding of waiver. You look for an example of trying to achieve a strategic advantage. But again, your honors haven't heard a word about why they waited, why they sat on their rights for that critical time. But in terms of other prejudice, your honor, no jury exercise, no work on jury instructions, no bringing of a motion to bifurcate a finding of liability on the insider trading claim for Mr. Jensen from the trading activity itself, all which would have been done had the SEC announced 90 days earlier or so. And it's not as if, your honors, the SEC was invisible or inaudible for those 90 days. On July 29, it opposed Mr. Jensen's motion for partial summary judgment, not a word about its right to jury. On August 19, we all came to court for the hearing on that motion, not a word about the right to jury trial. It was sprung at the very final stages of pretrial preparation, and there was prejudice. And under the case law, this circuit and Third Circuit, Sixth Circuit, and Fifth Circuit, it's not just was there an assertion of a right to jury trial, how timely was the objection when a matter is incorrectly set for bench trial? This was untimely. It caused harm. If I may. Your position, sir, that on a motion for summary judgment, one of the things that the non-moving party should bring up is a right to jury trial? Isn't that what you tell us on July 29th? What I'm suggesting, Your Honor, is if there's vigilance in terms of safeguarding a right, a constitutional right, there were, I'm simply trying to point out, it's not as if everybody took the summer off. But how is it relevant at all to talk about a jury trial on a motion for summary judgment? Tell me that. Well, it's a fair point, Your Honor. My only point is that the parties. Then why mention it? Pardon me? Then why did you mention it? I mentioned it because it's not as if the SEC was ignoring this case. Of course they're not ignoring this case. They're answering a motion for summary judgment on September 29th and August 19th. But I'm having difficulty understanding why they should say, oh, and by the way, Judge, we want to talk about jury trial again. Huh? Why? It hasn't been noticed. It's not a status conference. It's not a pretrial conference. Why should they bring it up? They should have brought it up when they had three months of an opportunity to bring up. Those were just made an objection to it on March 29th, right? They didn't make an objection to a court order. They just, they pointed out, Your Honor, that they didn't consent to what we said. And again, we're in agreement with 38 D requires a consent of the party. It does own consent. There was an erroneous order on June four and it was ignored for over three months. So once they stated a basis to make the order of June the fourth erroneous, is it your idea that they ought to have some sort of a tickler system to say, oh, judge real, that was an erroneous ruling every week or every 10 days or when? I'm simply following the jurisprudence of the circuits that there has to be vigilance in protecting it. What, what vigilance would you prescribe as a requirement? Well, I would prescribe that timely long before the last stages of pretrial preparation, the party file a motion for jury trial or a motion to reconsider. And again, Your Honor, if you look at the record on March 13, judge real granted a motion in lemonade on March 29, the SEC filed a motion to reconsider also on March 29, it filed its statement. I mean, it knew how to protect the record. It knew how to try to correct erroneous rulings by the court. The court's erroneous ruling was enunciated June four. It waited for three months. If I may, Your Honor, with respect to the harmless error point, I urge the panel when you return and process the briefing, process the record, process what's said here today, the SEC points at page 42 of its opening brief, page 11 of its right reply brief to this court's ruling in a case called Donahue, which is, and they state a correct rule of law, but what amounts to a truism when it's not applied to a record, but they state a directed verdict is not appropriate where credibility, where there's conflicts in evidence, calling into question credibility of witnesses. They made that statement. Then they promised in the next 20 pages that they would show how Donahue was violated here and how any error was not harmless. Urge, I urge the panel pages 44 through 64, there is not in the appellant's There is not a single citation to any fact witness whose testimony, if believed, moved the needle the other way, inconsistent with the court's ruling. Not, not a one. They did not argue below regarding the credibility of any of the witnesses it identified at page 42. It does not cite to the testimony of any of those men on appeal at no time in its opening brief or in its reply, do they point to a single conflict in the testimony that then rested upon the district court deciding this witness is telling the truth on this material point, or I believe, and I don't believe that Your honors, it, we set it below and we wrote it here. There literally was a unanimity of evidence with the fact witnesses in the case about the good faith of both defendants. This was a fraud trial, your honors, fraud, recklessness. Yes, sir. The fact that there may be a, the fact witnesses testimony wasn't disputed leaves us a long way from the conclusion because what we're talking about here really are the requirements of the accounting rules and the motivations for defendants. I mean, let's face it. Business executives want the best results they can. And so good faith enters into that. At what point is an executive's good faith colored by the fact that he's motivated to get, reach a certain result and maybe motivated to bend those accounting rules? Well, excellent question, your honor, all was within the case as tried. The fact witnesses and expert testimony went to that point and your honors, I and at oral argument, any reliance on any fact witness in the case, uh, that they claim a negative credibility determination was made about, they've abandoned their expert 108 pages. There is one citation in the reply brief on page 18 to their experts testimony. So your honors, we literally have a case where the case that was tried in the was no conflict at all in the evidence as to whether there was any effort to mislead the auditors, whether there was reckless conduct, it simply wasn't there. And there was no expert testimony that the SEC presents to this panel supporting its view that the accounting was not correct. So when you stand back from that, was their expert testimony presented by the commission that the accounting was not correct? Um, yes, no, your honor. If you would please look at our footnote six in our brief, please note, and I point you to what the district court found about the expert, but what's important here is the SEC abandoned their own expert. And the proof of that is their arguments on appeal. They don't cite to record evidence from fact witnesses or from their own expert or from the defendant's expert as to why the application of GAP at the time without the benefit of hindsight was negligent, reckless, or fraudulent. The evidence was unanimous that Mr. Jensen hired an accounting staff. The accounting staff interacted with the auditors. They all interacted with the audit committee. They all interacted with Latham and Watkins and other company counsel. And the evidence is unanimous that there was no deception, no misleading, nothing that would have gone to a jury on the lawsuit that they brought. Except there were profits that were booked that were never realized. Well, your honor, it's the question. That's true or not? There were revenues recognized. That were never actually received. That's correct. Okay. So that's, that by itself tells us there's a potential problem there. I'm having a little trouble. I mean, to be honest, I don't understand the thrust of what you're trying to tell me. You're telling me this is a directed verdict case, even if there's a jury? Oh, yes, your honor, I am. Why? Because there's no conflict in the testimony. There's no conflict on questions of deception, misleading, reckless, good faith, literally not. Did you make a rule 50 motion? We did. And was it granted? Um, the decision was reserved and then the district court issued its order. So no, but no, but on appeal, your honor is entitled to look to the evidence and look to, and again, your honor, a single witnesses testimony whose testimony, if believed points to a different result, they, they're what they didn't point to one because they can't because there wasn't, you know, the difficulty. And I thought you were possibly going to argue this way that there, there was no doubt in this record that, well, I won't say no doubt because it's always a doubt, but anyway, on this record, there was a reason to believe that there was going to be a jury trial. Do you agree to that point? Oh, there, there was until. That was reason to believe. Then there was not a jury trial. It was going to be a bench trial. What I wonder about, and that's what bothers a third of the court, because this may not even carry the day when I think about it in conference, but I want to hear your views and the other side to hear the views. Do you wait till after the fact to see how the result turns out and then say, all right, I'm going to go back and try? Do you ask for relief prior to going forward with, with the trial? Well, we think it was incumbent on the commission to ask for relief from the erroneous ruling well before the time that it did. The gap was three months there. I wanted you to make the point so they could rebut it if they can rebut it, because it seems to me if you have, if it's pretty clear on the record that you expect to have a jury trial, that the, that the court has even indicated that you're going to have a moment of truth, and you're not, it's going to be tried to court. Then do you go ahead and try it and wait for the result and then come to a court of appeals and say, here's where I stand, or do you act before the, the result is given? Oh, you have to act before the result. Yeah. You have to act before the result. I know we're out of time, but may I ask one question? At the end of the plaintiff's case, civil action, did you make a 41 motion? Is that the motion for a directive verdict? No, that's the motion for non-suit. Um, I recall in the record, we made a motion for a directive verdict, Your Honor. At the end of the plaintiff's case. Yes. Okay. Thanks. Um, with the remaining time, Your Honors, in response to Judge, uh, we're cutting into those last four minutes, so, um, okay. Um, in response to Judge Clifton's question, first of all, before I get there, I do urge Your Honors to construe Donahue and see whether the SEC has pointed to any material conflict in the testimony or conflict in the evidence as between the witnesses who testified between October 15 and October 25 of 2013, as opposed to the gloss and interpretation, Mr. Years after the fact with a hundred percent hindsight and in no reliance on the expert testimony that either side adduced at trial. But to Your Honor's question about what would, uh, a remand, which we urge you not to get there, but what would a remand look like, please note that in the pretrial order and all along the SEC said claim seven, which is the Sarbanes-Oxley 304 was to be tried to the court. Very unequivocal statement. So claim seven is done. It's res judicata, is our position as to Mr. Jensen and Mr. Ticoli. The other thing that I would urge to the court on remand is, and please, uh, I'm going to say on behalf of Mr. Jensen, the evidence is truly uncontroverted that Mr. Jensen in October of 2006, stepped out of oversight and management of Basin's day to day affairs. The first two transactions he negotiated and we stand by the uncontroverted evidence below that there was no deception and no fraudulent accounting and people work together with outside auditors to try to get things right. But the evidence is uncontroverted from all sides. All witnesses called in the case, Mr. Jensen never involved in the accounting treatments. With respect to the second four transactions, and these were the transactions our summer of 2013 motion for partial summary judgment were aimed at, we tried to have those knocked out as a matter of law because not only was he not involved in the accounting for those, he had no role whatsoever in the negotiation, papering, or anything to do with them at all. And he did not certify the audited financials on that count. So I, again, urge the panel, look to the record. Do not decide this case based upon what SEC lawyers say the evidence was. Decide it based on the evidence that both parties put before the district court. That evidence was unanimous that if there were mistakes in the accounting, the mistakes were innocent as in untethered to any criminal mens rea culpability, all involved stated that there was a collaborative effort to vet, to get it right. And the fact that there was a restatement and the fact that their lawyers disagree with the real time accounting treatment that Tom Ticholvi's team collaborated with their outside auditors and legal counsel to get right rather than trying to get wrong, again, your honors, there's no issue that a jury would have decided because all of the evidence was unanimous that they tried to get it right. It's a criminal mens rea requirement. I meant just a culpable, I meant a culpable mental state. I improperly injected the word criminal. Culpable mental state. All evidence, all sides, they tried to get it right. If there are any other questions from the panel, I don't know if I have time remaining, but apparently not. Okay. Thank you. Now, although you have actually exhausted your colleague's time, let me ask Mr. Aronson if there's anything he feels the need to put in front of us. No, I don't, your honor, unless you have any specific questions. Thank you. Rebuttal. Thank you, your honors. I'll try to be very brief. So first, with respect to the issue of the jury trial waiver, I think this circuit's precedent is abundantly clear that so long as an objection is made to an order setting erroneously a bench trial, between the time of that erroneous order and the bench trial, that is sufficient to preserve the jury trial right here. And I think that's the best time to do that. When was the first objection, leaving aside the response filed the same day. Yes. And then the district court issues its order, it's going to be a bench trial. When was the first objection presented to the court after that? The first objection was presented, well, first, the commission notified defense counsel two days after the order that it, again, objected, did not consent, and was going to notify the court and figure out what was the best time to do that. And I think that goes to Judge Bea's questioning, which is, I think, the most logical time in light of the procedural posture of the case was in the pretrial order. And that was when they did it at the first time was the proposed pretrial order in September. You see what my problem is? And it is a problem. You know you've got to get three votes, and I'm only giving you one. Okay. But the problem that I have as I listen to the whole argument, let's assume if there was another way around, let's assume you had wanted a bench trial and Judge Reilly said, no, we're going to try this case to a jury, because after all, we've got some questions and I want the jury to answer them. So you go ahead and you try it to the jury, and you like the result, it's over, the case is over, everybody's satisfied with the result. But you don't like the result, then the case isn't over, because you said, oh, yeah, wait a minute. I said I wanted to try this case. Now, do you see any problem there? Oh, no. In theory, absolutely, that is a problem. And I think that's the problem that the Ninth Circuit addressed in White v. McGinnis. You had a party that didn't object at all to setting a bench trial, and he didn't even object at the trial or after the trial, and raised that for the first time on appeal. And as this circuit said in the Solis case, that is what acting strategically is, trying to get a second procedural bite at the apple. That's clearly not what the commission did here. As you noted, the objection was made by the commission before the trial, multiple times, five times, Your Honor. So this was not a case where the commission was trying to do the same thing. Kennedy, take me through your five times. The five times are, first, in the proposed pretrial order, second, in the oral argument. And when was that submitted to the court? September 5th, I believe, Your Honor. The second was the oral argument before the court on the pretrial order, which was September 9th. Then the trial brief submitted to the court. The commission, again, then submitted proposed jury instructions to the court, and finally objected on the first day of the trial before opening statements. But is it accurate to say that between the trial order on June 4th, in which bench trial was ordered, and September 5th, which would be three months and one day, there was no paper filed with the district court by the SEC demanding a jury trial? That is correct. That is correct. But I think in terms of the issue of prejudice here, I think, first, the standard, because this is a fundamental right, does not, as this circuit has recognized, there's no sort of discussion of prejudice. And I think any prejudice is minimal, if at all, because, as I mentioned at the beginning, the parties had undergone discovery and substantive motions practice. Basically, the entire process was done. All that needed to happen was to go to the trial. And the commission objected over five weeks before the trial. So it wasn't as if this was on the eve of trial as the defendants are making this out. So any harm or prejudice that they claim to have felt, I think, is de minimis. And you do grant Mr. Shepard's point that preparing expert testimony for a judge trial may be significantly different from preparing it for a jury trial. I do grant that. But I would also like to point out to the Court that this Court, that the parties conducted discovery and, indeed, did depositions of those expert witnesses and other fact witnesses as if there was going to be a jury trial. And that was for 18 months. So I think the Court, to the extent that it's taking into account prejudice, should also take into account the prejudice to the commission that it was preparing the case for 18 months as if it was going to a jury trial, only to have it taken away at the last minute by the defendants. If we flesh out this timeline, you made reference to a letter that was sent to defense counsel with regard to the bench and jury trial. And when was that? The letter? No. You filed your objection with the Court on March 29th. That's correct. Yes. The Court comes out with an order that there's going to be a bench trial. Yes. When was that? That was June 4th. Was there any communication made to defense counsel at that point? Yes, it was on, I think it was two days later on June 6th. And I believe it was at a settlement conference with the special master that indicated it was going to figure out, that it objected again. And it was going to figure out what it was, how it was going to notify the court of its objection. Was there any written communication from that point until the proposed final pretrial order? It's not in the record, if there was, Your Honor. I realize that my time is- We took you there. Well, is there anything else for the field you need to say to us? Well, I would like to point out that, again, this is the better course that the commission took under Nordbrock by raising the issue in the pretrial order with respect to hindsight, it's not hindsight if you're looking to subsequent documents when the initial documents in the transaction contemplate the execution of a subsequent document, and I would urge the court to look to SAB 104, which states clearly that if the parties agree that there's going to be the negotiation and execution of a subsequent document, that it would be improper to recognize revenue until that subsequent document is executed. And that happened on three transactions here, Opus Trust, VLC1, and WSS1. And with respect to the SOX 304, this court should decide that issue here. I disagree with my colleague. This court should decide that issue here because the defendants are, there's no dispute that the, at least here, that the defendants are control persons as the CEO and CFO of Basin, and therefore they are liable as control persons for Basin's misconduct, which arises out of the restatement. Was that a bench trial issue? That is a bench trial issue, but I think- Is it one in which the jury's findings would control? Yes. Yes, it is. It is, but I believe that there's sufficient evidence, particularly in light of the restatement here, that this court could reach that conclusion here without having to do anything else. And I would also like to, I would also like to say that with respect to, although the commission is entitled to, at a minimum, a jury trial, and that error was not harmless, in light of the strength of the evidence here, much of which was disregarded or not considered by the district court, we would ask that this court enter judgment in favor of the commission and against the defendants on all claims. Thank you. Thank you. We thank all counsel for your helpful arguments in this complicated case. The case is submitted for decision.
judges: Farris, Clifton, Bea